STATE OF NORTH CAROLINA v. KENNETH KING

No. COA02-830

(Filed 20 May 2003)

**1. Constitutional Law— right to counsel—waiver**

A pro se defendant who had been represented by six attorneys voluntarily waived his right to counsel and elected to proceed pro se where he clearly and unequivocally expressed his desire to proceed pro se to one judge in response to questions posed in accordance with N.C.G.S. § 15A-1242, stated a week later to a different judge that he had misunderstood the first judge, and said under oath that he nonetheless wanted to waive appointed counsel and would represent himself if he did not hire a lawyer.

STATE v. KING

[158 N.C. App. 60 (2003)]

**2. Constitutional Law— speedy trial—changing attorneys**

A defendant's right to a speedy trial was not violated where the significant time between indictment and trial was largely due to several attorneys preparing for trial and then withdrawing after conflicts with defendant.

**3. Possession of Stolen Property— felonious—sufficiency of evidence**

The trial court correctly refused to dismiss a charge of felonious possession of stolen goods for insufficient evidence where defendant contended that a witness's answers about the value of the stolen car were contradictory, but the witness's statements on cross-examination about the value of the vehicle were a further explanation of his answer on direct examination.

**4. Burglary and Unlawful Breaking or Entering— vacant house—sufficiency of evidence**

There was sufficient evidence to present breaking and entering a vacant house to the jury where there was a sufficient factual basis for a latent print examiner's opinion matching defendant's shoe print impressions to those found at the scene and sufficient evidence for the jury to infer intent to commit larceny.

**5. Sentencing— habitual felon—guilty plea—voluntary**

A habitual felon plea was voluntary where the trial judge explained the habitual felon phase of the trial to the pro se defendant and told defendant that he would give some consideration to someone pleading guilty. The judge also said that he was not making a promise or a threat, made it clear that they would proceed before the jury if defendant did not want to plead guilty, and appointed a lawyer to confer with and represent defendant.

Appeal by defendant from judgments entered 1 November 2001 by Judge J. B. Allen in Superior Court, Wake County. Heard in the Court of Appeals 25 March 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Harriet F. Worley, for the State.*

*Winifred H. Dillon for the defendant-appellant.*

**STATE v. KING**

[158 N.C. App. 60 (2003)]

TYSON, Judge.

Kenneth King ("defendant") appeals from (1) his convictions for possession without lawful excuse of implements of housebreaking, felonious possession of stolen goods and three counts of felonious breaking and entering and (2) his plea to being an habitual felon. We find no error.

## I. Background

At approximately 10:45 pm on 11 July 1998, a homeowner called the sheriff's department reporting suspicious activity in his subdivision. Upon the deputies' arrival, the homeowner described a man, who had run out of the homeowner's garage, and told the deputies about a vehicle parked behind a vacant house next door. The deputies determined the vehicle was stolen. Subsequently, the deputies arrested defendant when he approached the stolen car and placed his hand on the door handle. The deputies found two screwdrivers, a pair of pliers, brown gloves, and tissue paper inside a baggie during a search of defendant.

Upon further investigation, the deputies determined the screwdriver had been stolen from another resident's shed and that someone had peered into the vacant house by standing on an air conditioning unit. The latent print examiner from the City County Bureau of Identification retrieved a shoe print from the vacant house's kitchen floor and later opined, as an expert witness, that the shoe prints taken from the vacant house came from defendant's shoe soles. Nothing was taken from the vacant house.

Defendant testified that he was walking in the neighborhood after helping a friend change some door locks. He had left the friend's home and was going to walk approximately six miles to another house to buy marijuana. On the way, defendant testified his stomach became upset and needed to use the bathroom. According to defendant, he went into the subdivision to find some toilet paper, which was why he was in one of the resident's garage. He also testified he returned to the subdivision when he saw the police in order "to clear everything up."

After a jury trial, defendant was acquitted of larceny and convicted of felony possession of stolen goods, possession of implements of housebreaking, and three counts of breaking and entering. Defendant pled guilty to being an habitual felon. The trial court sentenced defendant as an habitual felon to three concur-

rent sentences of 120 to 153 months, and two consecutive sentences of the same length, for a total active sentence of 360 to 459 months. Defendant appeals.

## II. Issues

Defendant contends the trial court erred by (1) denying him his right to counsel, (2) denying him a speedy trial, (3) denying his motion to dismiss for insufficient evidence, and (4) coercing him to plead guilty to being an habitual felon.

## III. Right to Counsel

[1] Defendant contends his constitutional right to counsel was violated when the trial court required him to proceed *pro se* at a motion hearing and at trial. Defendant had previously been represented by six different attorneys. On 18 September 2001, defendant requested the trial court to allow him to represent himself. Before allowing a criminal defendant to waive in-court representation, a trial court must insure that constitutional and statutory standards are satisfied. *State v. Hyatt*, 132 N.C. App. 697, 702, 513 S.E.2d 90, 94 (1999). "First, a criminal defendant's election to proceed *pro se* must be 'clearly and unequivocally' expressed. Second, the trial court must make a thorough inquiry into whether the defendant's waiver was knowingly, intelligently and voluntarily made." *Id.* (citations omitted).

N.C. Gen. Stat. § 15A-1242 (2001) provides:

A defendant may be permitted at his election to proceed in the trial of his case without the assistance of counsel only after the trial judge makes thorough inquiry and is satisfied that the defendant:

(1) Has been clearly advised of his right to the assistance of counsel, including his right to the assignment of counsel when he is so entitled;

(2) Understands and appreciates the consequences of this decision; and

(3) Comprehends the nature of the charges and proceedings and the range of permissible punishments.

"Our Supreme Court has stated that the inquiry mandated by N.C. Gen. Stat. § 15A-1242 satisfies these requirements." *Hyatt*, 132 N.C. App. at 702, 513 S.E.2d at 94.

In this case, the transcript clearly shows Judge Stephens complied with the mandates of N.C. Gen. Stat. § 15A-1242 on 18 September 2001. Defendant clearly and unequivocally expressed his desire to proceed *pro* se through his responses to the questions posed in accordance with G.S. 15A-1242. Defendant knowingly, intelligently and voluntarily waived his right to counsel at that time. The following week before Judge Allen, defendant stated he misunderstood Judge Stephens because he thought the judge was referring to a waiver of court-appointed attorneys. Nevertheless, defendant stated under oath before Judge Allen that he was "waiving [his] right for a court-appointed lawyer" and "[i]f I don't hire a lawyer, I'll represent myself." Defendant voluntarily waived his right to counsel and elected to proceed *pro se*. The trial court did not deny him his constitutional right to counsel. This assignment of error is overruled.

## IV. Speedy Trial

[2] Defendant contends his constitutional right to a speedy trial under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 18 of the North Carolina Constitution were violated. There are four factors " 'which courts should assess in determining whether a particular defendant has been deprived of his right' to a speedy trial under the federal Constitution. These factors are (i) the length of delay, (ii) the reason for the delay, (iii) the defendant's assertion of his right to a speedy trial, and (iv) whether the defendant has suffered prejudice as a result of the delay." *State v. Grooms*, 353 N.C. 50, 62, 540 S.E.2d 713, 722 (2000), *cert. denied*, 534 U.S. 838, 151 L. Ed. 2d 54 (2001) (citations omitted). "[D]efendant has the burden of showing that the delay was caused by the neglect or willfulness of the prosecution." *Id.* Defendant has not met this burden.

The record reveals defendant's trial was set three times during March, September, and November 1999. Spurgeon Fields, III, Esq. was appointed by the court to represent defendant in July 1998, shortly after defendant's arrest. In September, defendant's family hired George Currin, Esq. Mr. Currin, with defendant's permission, hired Hart Miles, Esq. as co-counsel to assist with defendant's case. Mr. Currin asked the assistant district attorney to remove the case from the March 1st calendar because pretrial motions were pending. Those motions were not reached in March 1999 due to a crowded court docket and were not resolved until September 1999. Because of the pending motions and Mr. Currin's withdrawal from the case, defend-

STATE v. KING

[158 N.C. App. 60 (2003)]

ant's trial was calendared for November 1999. In November 1999, defendant's new counsel, Russell Dement, Jr., Esq., requested a continuance in order to adequately prepare for trial. From November 1999 until Mr. Dement's withdrawal on 7 August 2001, the record reveals Mr. Dement prepared for the case by interviewing several witnesses, viewing the crime scene, and discussing trial strategy with defendant and defendant's family. During this time, Mr. Dement requested on several occasions that the assistant district attorney not calendar the case. After Mr. Dement's withdrawal because of a trial strategy disagreement, Cindy Popkin-Bradley, Esq. was retained as defendant's counsel. Shortly after Ms. Popkin-Bradley's retention, she withdrew on 28 August 2001 on the grounds that defendant refused to cooperate with her. On 29 August 2001, Tommy Manning, Esq. was appointed to represent defendant. The following month, defendant requested to proceed *pro se*, and the trial was eventually calendered for the week of 29 October 2001.

Although a significant amount of time lapsed between defendant's indictments and trial, the record reveals the delay was largely due to defense counsel's trial preparation and the withdrawal of several attorneys due to conflicts with defendant. Defendant has not shown the delay was caused by the neglect or willfulness of the prosecution. We hold that defendant failed to show that his constitutional right to a speedy trial was violated. This assignment of error is overruled.

## V. Insufficient Evidence

Defendant contends that the charges of felonious possession of stolen goods and the vacant house breaking and entering should have been dismissed for insufficient evidence. Defendant admits in his brief that these issues were not preserved for appellate review. Defendant failed to move to dismiss the charges at the close of all evidence. We review defendant's arguments on these issues pursuant to N.C. R. App. P. 2 (2002) in the interest of justice.

"A case is properly submitted to the jury 'when there is any evidence that tends to prove the fact in issue or that reasonably supports a logical and legitimate deduction as to the existence of that fact.' . . . If the record discloses substantial evidence of each essential element constituting the offense for which the accused was tried and that defendant was the perpetrator of that offense, then the trial court's denial of a motion to dismiss for evidentiary insufficiency should be affirmed." *State v. Alford*, 329 N.C. 755, 759-60, 407 S.E.2d

STATE v. KING

[158 N.C. App. 60 (2003)]

519, 522 (1991). "In measuring the sufficiency of the evidence, the reviewing court must consider the evidence in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn therefrom." *Id.* at 759, 407 S.E.2d at 522.

### A.  Possession of Stolen Goods

**[3]** Felonious possession of stolen goods requires evidence of: (i) possession of personal property; (ii) valued at greater than $1,000; (iii) which has been stolen; (iv) the possessor knowing or having reasonable grounds to believe that the property is stolen; and (v) the possessor acts with a dishonest purpose. *See* N.C. Gen. Stat. § 14-71.1. Defendant contends the State presented insufficient evidence that the value of the stolen car, a 1986 Pontiac Grand Prix, was in excess of $1,000. We disagree.

Through the testimony of Donald Sigmon, the State sought to establish the value of the car stolen from Leith Buick exceeded $1,000. On direct, Mr. Sigmon, an employee of the Leith Management Company, responded "yes, ma'am" to the question "[a]nd had you sold that car on the retail market in 1998, would it be fair to say that the value of that car would have been in excess of $1,000?" On cross-examination, Mr. Sigmon testified the car did not have a "book value" and, in response to defendant's question "So why were I saying—that car—over a—worth a thousand dollars, is that what you said, it [sic] worth or that's what you saying that you can sell it for?", he stated, "I've been doing this 30 years. In my opinion, that's the best what it was worth."

Defendant contends the witness's answers on direct and cross-examination were contradictory. Viewing the evidence in the light most favorable to the State, we disagree. This Court views the witness's statements on cross-examination as further explanation of his answer on direct by stating he based his opinion that the car was worth in excess of $1,000 upon his thirty years of experience. The trial court did not err in not dismissing the felonious possession of stolen goods charge. This assignment of error is overruled.

### B.  Breaking and Entering

**[4]** Defendant also contends there was insufficient evidence to present the breaking and entering into the vacant house charge to the jury.

## 1. Expert Opinion

The defendant argues the only evidence presented by the State allegedly placing him in the house was a shoe print impression from the kitchen floor, which the latent print examiner opined came from the defendant's shoe without providing a factual basis for his opinion. The latent print examiner testified regarding: (1) how the prints were lifted, (2) the comparison process, (3) how he matched the unique characteristics of defendant's shoe soles to a shoe print impression from the air conditioning unit, and (4) his opinion of whether the defendant's shoes made the prints and illustrated with a print from the air conditioning unit. The latent print examiner also testified that he used the same technique in matching the other shoe print impressions from the air conditioning unit and the kitchen to defendant's shoes. We hold that a sufficient factual basis was shown for the latent print examiner's opinion.

## 2. Entry to Commit Larceny

Defendant also contends the State's evidence failed to establish he entered the house to commit larceny. However, "[w]ithout other explanation for breaking into the building or a showing of the owner's consent, intent may be inferred from the circumstances." *State v. Myrick*, 306 N.C. 110, 115, 291 S.E.2d 577, 580 (1982). When people enter homes in the night, "[t]he most usual intent is to steal, and when there is no explanation or evidence of a different intent, the ordinary mind will infer this also." *State v. Bumgarner*, 147 N.C. App. 409, 416, 556 S.E.2d 324, 330 (2001) (quoting *State v. Sweezy*, 291 N.C. 366, 384, 230 S.E.2d 524, 535 (1976)). The jury heard testimony that (1) defendant had entered Mr. Edward's garage that same evening and attempted to open a chest containing tools; (2) defendant entered the storage shed of Mr. Holley that evening and removed items from that storage shed, including items found on defendant's person when arrested; and (3) defendant was in possession of burglary tools at the time of his arrest. When the evidence is viewed in the light most favorable to the State, sufficient evidence was presented from which the jury could infer the defendant intended to commit larceny upon breaking and entering the vacant house. This assignment of error is overruled.

## VI. Habitual Felon Plea

[5] Defendant contends his habitual felon guilty plea was involuntary. We disagree.

N.C. Gen. Stat. § 15A-1021(b) forbids any representative of the State, including a judge, from improperly pressuring a defendant into a plea of guilty or *nolo contendere*. *See also State v. Pait*, 81 N.C. App. 286, 343 S.E.2d 573 (1986).

After defendant's convictions on the underlying felonies and after advising the defendant of the three predicate felony convictions, the trial court advised the defendant:

> Now, the State has the burden of proving those convictions beyond a reasonable doubt. I would give you the opportunity, if you want to, to admit those violations, those convictions. I'll give you the privilege, if you want to plead guilty to being a habitual felon, and I would tell you that it is my practice that I give a lot of consideration for someone pleading guilty.

The trial court then stated, "I'm not promising you anything, I am not threatening you in any way."

The trial judge further stated to defendant, "Now, at this point, we're not talking about a lawyer. I want to know, do you want to plead guilty to being a habitual felon? You don't have to. All you've got to do is say no, I don't, and we'll proceed with this hearing." Defendant immediately stated that he wanted to plead guilty. However, before entering the plea, defendant indicated that he wanted to speak with a lawyer.

The trial court halted the proceedings and appointed a lawyer for the habitual felon phase of the trial. Defendant and his counsel left the courtroom and discussed the matter. Defendant returned to the courtroom and pled guilty to being a habitual felon. Prior to reviewing the plea transcript with defendant, the trial judge told him "Now, if you have any questions concerning—or questions about these questions I'm going to ask you, you refer to [your lawyer] before you answer." The trial judge then reviewed the transcript of plea with defendant. Defendant was advised by the trial court that he had the right to plead not guilty and have a jury trial. No plea bargain was made. In response to the question "Has anyone made any promises or threatened you in any way to cause you to enter this plea against your wishes?," defendant responded "No." The record shows that defense counsel discussed with defendant that his right to appeal the five felony convictions would be unaffected by his guilty plea to habitual felon status.

Very few cases in North Carolina hold that conduct of a trial judge rendered a defendant's plea involuntary. In *State v. Benfield*, 264 N.C. 75, 140 S.E.2d 706 (1965), the defendant was being retried for armed robbery. The trial judge told the defendant's counsel that the jury would surely convict the defendant and that if it did so, "he felt inclined to give him a long sentence[.]" *Benfield*, 264 N.C. at 76-77, 140 S.E.2d at 707-08. The defendant then changed his plea to guilty. *Id.* The defendant knew that his co-defendant had pled guilty and received a suspended sentence. *Id.* Based upon these factors, our Supreme Court held that the defendant's plea was involuntary. *Id.*

In *State v. Cannon*, 326 N.C. 37, 387 S.E.2d 450 (1990), the trial court made inquiry of defense counsel concerning the possibility of a negotiated plea after a lengthy *voir dire* hearing. Defense counsel advised the judge that their clients wanted a jury trial. *Cannon*, 326 N.C. at 38-39, 387 S.E.2d at 451. The judge then stated, in no uncertain terms, that if defendants were convicted, they would receive the maximum sentence. *Id.* Defendants were convicted of armed robbery, and received sentences of 35 years and 30 years respectively. *Id.* Our Supreme Court ordered new sentencing hearings and noted, had defendants pled guilty after they heard the judge's remarks, "serious constitutional questions would have arisen as to the voluntariness of the pleas." *Id.* at 40, 387 S.E.2d at 452.

In *State v. Pait*, 81 N.C. App. 286, 343 S.E.2d 573 (1986), the defendant entered pleas of not guilty to multiple felony charges. The trial judge became "visibly agitated" and stated that he was tired of " 'frivolous pleas.' " *Pait*, 81 N.C. App. at 287, 343 S.E.2d at 575. The judge directly questioned the defendant and asked whether he had made any incriminating statements to the police. *Id.* Upon an affirmative response, the trial judge directed defendant and his counsel to confer and return with "an 'honest plea.' " *Id.* at 288, 343 S.E.2d at 575. Defense counsel advised defendant of the maximum punishment of 60 years and defendant entered guilty pleas. *Id.* This Court held that the defendant's plea was involuntary. *Id.* at 289-90, 343 S.E.2d at 576.

In each of these cases, clear, unequivocal statements by the trial judge directly resulted in the defendants' guilty pleas and rendered them involuntary. Such is not the case here. In making a determination of whether a defendant's plea was voluntary, the appellate court should look at the entire proceeding and make its decision based on the totality of the circumstances.

In this case, the trial judge explained the habitual felon phase of the trial to the *pro se* defendant and inquired as to whether defendant wished to plead guilty. The judge told defendant that he would give consideration to someone pleading guilty. However, the judge also stated that he was not promising defendant anything or threatening him in any way, and made it clear that if defendant did not want to plead guilty that the hearing before the jury would proceed. Further, the trial judge appointed a lawyer to represent defendant and defendant conferred with the attorney before he accepted the guilty plea. Taken in its totality, the evidence shows that defendant's plea was voluntary. This assignment of error is overruled.

## VII. Conclusion

Defendant was not denied his constitutional right to counsel or to a speedy trial. The State presented sufficient evidence that defendant committed the crimes of breaking and entering, felony possession of stolen goods, and possession of implements of housebreaking to survive defendant's motions to dismiss. Defendant voluntarily pled guilty to being an habitual felon.

No error.

Judge STEELMAN concurs.

Judge WYNN concurs in the result.